STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Buck Fifty, LLC Construction Application | } | Docket No. 138-7-08 Vtec |
| (Appeal of Buck Fifty, LLC) | } | |
|  | } | |

Decision and Order

Appellant-Applicant Buck Fifty, LLC (Applicant) appealed from a decision of the Development Review Board (DRB) of the City of Rutland, approving Applicant's construction of a medical building but imposing a condition contested by Applicant. Appellant-Applicant is represented by Jon S. Readnour, Esq.; and the City is represented by Andrew Costello, Esq. Interested party David Nowick has appeared and represents himself; he participated in pretrial conferences and attended the trial, but did not file any memoranda.

Applicant proposes to construct a medical office building and associated parking on property consisting of Lots 1, 2, and 5[1] of a medical planned office park at 69 Allen Street in the City of Rutland. Applicant is a Vermont limited liability company owned by Dr. Praveen Keshava. Dr. Keshava proposes conduct his ophthalmology medical practice, Central Vermont Eye Care, in the new building.

Prior to trial the parties agreed that Question 1 of the Statement of Questions was resolved by their agreement that the building at issue has a total area or footprint of 4,900 square feet[2] rather than the 4,000 square foot area stated in the DRB decision, and agreed that the DRB decision should be amended to reflect that fact.

The remaining questions addressed whether the project parking meets the

---

[1] Actual construction is proposed only on Lots 1 and 5.
[2] The medical office space within the building has an area of 4,770 square feet.

requirements of the Zoning Bylaws, and whether Condition 3 poses unreasonable and inappropriate conditions and should be deleted.

Condition 3, the contested condition, states that

[t]his approval is for two physicians or physician's assistants and support staff not to exceed seven staff persons. Any expansion beyond total employees (including physicians or physician's assistants) of nine will require a hearing and amendment of this permit.

In its proposed findings and memorandum, the City agreed that Condition 3 is inappropriate and agreed that it should be "stricken," but argued for the imposition of an alternate condition addressing the parking spaces for the proposed project.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

A medical planned office park consisting of seven lots is located at 69 Allen Street, on the northern side of Allen Street close to the Rutland Regional Medical Center. Existing buildings are located on three of the lots: a group home called "Our House,"[3] and two office condominium buildings housing medical and dental practices: one referred to as the "Medical-Dental" building, and one referred to as the "69 Allen Street" building. The 69 Allen Street building has an area of 9,224 square feet of office space; the Medical-Dental building has two stories and an area of 15,074 square feet of office space. The proposed medical office building has an area of 4,770 square feet of office space.

---

[3] Four parking spaces are assigned exclusively to the existing group home. Those spaces and the parking demand for the group home are separate from the parking for the remainder of the site and will not be further discussed in this decision.

2

The existing parking spaces on the property are not denoted by painted stripes, so that parking usage on the property is somewhat haphazard and inefficient. Using the Institute of Transportation Engineers' standards for parking spaces to assess parking demand and usage, the two existing medical condominium buildings share approximately a total of 130 existing parking spaces, estimated based on the area and configuration of the existing parking areas.

The proposed project involves Lots 1, 2 and 5 of the medical complex. Lots 1 and 2 are vacant. Lot 5 consists of three areas; the northerly and southerly of these three areas are each joined to the central area by one corner. For ease of description this decision will refer to the three areas as Lot 5 North, Lot 5 West, and Lot 5 South. Lot 5 North is located to the northwest of the existing Medical-Dental building and contains a portion of the existing parking area serving the Medical-Dental building. Lot 5 West is located to the west of the Medical-Dental building; it contains a pond and currently contains a portion of the existing parking area serving the Medical-Dental building. Lot 5 South is located to the southwest of the Medical-Dental building and to the west of the 69 Allen Street building; it currently contains a portion of the existing parking area serving both existing buildings.

The proposed new building will occupy an area now containing 24 parking spaces in Lot 5 West. However, a new parking area is proposed to be created on Lot 1, and new parking spaces are also proposed to be created along the east side of the new building, between it and the Medical-Dental building. In addition, all the other existing parking areas are proposed to be squared off and painted with striping, so that after construction 137 spaces will be available for the use of the three buildings. The painted striping proposed in connection with the proposed project will improve the ability of users of the site to park in an orderly fashion and to make actual use of all of the available space in the parking areas.

3

The current parking demand of the two existing buildings can be measured or estimated by several different techniques. Actual parking counts taken during the week from Tuesday, April 29, 2008 through Tuesday, May 5, 2008 revealed a maximum (peak) parking usage at any one time of 87 vehicles for the two existing buildings, occurring at 10:00 a.m. on Tuesday, April 29, 2008. This actual count, divided by the number of square feet of medical office space in the existing buildings, yields a peak parking demand for the existing buildings of 3.7 parked vehicles per thousand square feet of medical office space. This actual peak parking demand at the site is bracketed by the Institute of Transportation Engineers (ITE) calculated peak parking demand rate of 3.5 vehicles per thousand square feet and the ITE calculated parking supply rate of 3.9 spaces per thousand square feet for the land use category of "medical-dental office building," based on studies of such sites nationwide.

This decision therefore uses the highest (most conservative) rate to determine the adequacy of the 137 spaces of parking proposed to be provided on site, due to the fact that the observed parking demand rate at this site (3.7 vehicles per thousand square feet) slightly exceeds the national average peak parking demand rate. Even applying the 3.9 rate, the two existing buildings would require 95 spaces to accommodate their peak parking demand, and the new building would require an additional 18.6 spaces (rounded to 19 for the purposes of this analysis). The total parking required for the three buildings after construction would therefore be a maximum of 114 spaces, leaving a safety margin of 23 spaces for the three buildings.

The City argues for the use of a higher rate of 4.5 spaces per thousand square feet of office space, to provide an additional margin when spaces are unavailable during construction[4] or due to snow removal or other maintenance. That higher rate would require 131 spaces, which is still within the number of spaces provided by the proposal.

_____

[4] In any event, any need for a margin due to construction would be temporary.

By all objective measures of the adequacy of parking for the proposed new building and for the three buildings sharing parking at the site, the proposed 137 spaces, if laid out with striping as designed, will be adequate parking for the three buildings.

The 2004 City of Rutland zoning bylaws do not contain any requirements regarding any specific number of parking spaces required for any particular use category, nor any requirements regarding the size or configuration of parking spaces. They do not contain any standard that would allow a condition linking the number of required spaces to the number of employees. The only criterion regarding parking in the site plan approval standards is that the DRB "may impose appropriate conditions and safeguards to ensure [the] adequacy[5] of . . . . parking." § 31-209(C)(1). The parking proposed for the site will be adequate if constructed as designed, with ordinary maintenance and snow removal, and without any additional conditions restricting the new building to the use of 21 specific spaces.[6]

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Condition 3 is deleted and, the proposed project is approved, as stated in the DRB decision, but as altered by this decision and without Condition 3.

Done at Berlin, Vermont, this 13th day of May, 2009.

_____
Merideth Wright
Environmental Judge

_____

[5] Because the proposed number of spaces is adequate under any of the alternative methods proposed in this appeal for determining parking adequacy, this decision need not reach the question of whether the "adequacy" of parking is too vague a standard without specific numerical or other descriptive requirements in the ordinance. See In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶¶ 12–14.

[6] Because no additional condition is necessary to provide adequate parking on the site, it is not necessary to determine whether the condominium documents allow for the segregation of parking proposed by the City as its alternative condition.